UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Servisio Simmon, | ) | |
|       Plaintiff, | ) | |
| v. | ) | CASE NO |
| | ) | COMPLAINT |
| City of New York, Police Officer | ) | JURY TRIAL DEMAND |
| John Does 1-5. | ) | |
|       Defendants. | ) | |

_____

**PRELIMINARY STATEMENT**

1. Servisio Simmon, an emotionally disturbed person who was suffering from a mental health crisis while incarcerated, was brutally assaulted by officers resulting in a fractured wrist that required surgery. This use of excessive and unnecessary force was due, in part, to that lack of training provided by the City to the Crisis Intervention Teams, where tens of thousands of officers have failed to receive the life-saving training.

2. Mr. Simmon brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his rights under the Constitution of the United States of America and the New York State Constitution.

1

## JURISDICTION AND VENUE

3. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth , Eighth, and Fourteenth Amendments to the United States Constitution, as well as the New York State Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4) because Mr. Simmon's claims arise under law of the United States and seek redress of the deprivation under color of state law of rights guaranteed by the United States Constitution.

4. Venue lies in the Southern District of New York under 28 U.S.C.§ 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claim occurred in the District.

## THE PARTIES

5. Plaintiff Servisio Simmon is a resident of New York County - Manhattan, New York.

6. Defendant City of New York is a municipal corporation organized under the laws of the State of New York. It operates the New York City Police Department ("NYPD"), a department or agency of defendant City of New York responsible for the appointment, training, supervision, promotion and discipline of correction officers and supervisory correction officers, including the individually named defendants herein. The City of New York is sued pursuant to *Monell*.

7. Defendant Police Officer "John" Does – first and last name fictitious because it is unknown - Officer John Does was at all times relevant to this Complaint a duly appointed and acting employee of the City of New York and the New York Police

Department, acting under color of law and in their individual capacities within the scope of employment pursuant to the statutes, ordinances, regulations, policies, customs, and usage of the City of New York and the NYPD. They are sued in their individual capacity.

## JURY DEMAND

8. Plaintiff Servisio Simmon demands a jury trial.

## STATEMENT OF FACTS

**Servisio Simmon, After Being Placed Under Arrest, Informs The Officers At The Precinct He Is Feeling Suicidal**

9. On or about August 07, 2020, Mr. Simmon was placed under arrest on suspicion of robbery. Though he did not commit the crime, that arrest is not the subject matter of the instant lawsuit.

10. On August 08, 2020, Mr. Simmon woke up in the cell and informed the officers that he was suicidal. Officers responded that "they were working on it."

11. Later, a homicide detective came to interrogate Mr. Simmon. The detective told Mr. Simmon that he was facing life in prison.

**Serivisio Simmon Suffers A Mental Health Crisis After The Interrogation**

12. Soon after midnight, Mr. Simmon suffered from a mental health crisis. He took off his pants and began to use the pants in the cell to hang himself.

13. As he was attempting to hang the pants, the officers ran into the cell and yelled at him to stop.

14. Instead of attempting to assist Mr. Simmon, the officers went inside his cell, threw him against the wall, and put him in the headlock.

15. One officer, who put Mr. Simmon in a headlock, applied pressure to Mr. Simmon neck in such a way that he could not breathe.

16. Mr. Simmon did not resist or attempt to fight back.

17. The officers then proceeded to forcefully inject him with a needle.

18. As Mr. Simmon was falling unconscious, he felt his wrist snap.

**Mr. Simmon Wakes Up In The Hospital With A Fractured Wrist**

19. Plaintiff woke up inside Bellevue Hospital chained to a bed.  There were also two other officers who were present and monitoring him.

20. Plaintiff heard a medical professional that Mr. Simmon had fractured his wrist.

21. Plaintiff also heard the officer tell the medical professional to say that it was an "old injury."

22. Mr. Simmon was given a splint and pain medication before being transported to Manhattan Criminal Court for arraignment.

23. None of the aforementioned acts were protected by legal privilege, nor were such acts legally justified. Said occurrence and the injuries and damages sustained by claimant were due solely to the negligence, carelessness, recklessness and willful misconduct of the CITY OF NEW YORK, its agents, servants and/or employees.

24. As a result of the defendants' conduct, plaintiff has been caused to suffer, *inter alia*, severe anxiety, humiliation, and embarrassment, damage to personal reputation, physical injury, apprehension, , emotional and psychological trauma, loss of income, and

violation of rights under the New York Constitutions, and applicable statutory and case law.

**CLAIMS FOR RELIEF**

**Claim I: Monell Claim Under 42 U.S.C. § 1983**
*Against City of New York*

25. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

26. The *Monell* Claim is basic and straightforward, by failing to properly train NYPD Officers to deal with Emotionally Disturbed People ("EDP"), the City has shown a deliberate indifference that has resulted in Plaintiff's constitutional violations.

27. The impact of officers not being trained on dealing with EDPs cannot be overstated. The NYPD gets over 100,000 calls a year for individuals who may be "possible" EDPs.[1] These calls may not only result in arrest, but in post arrest interactions similar to the situation that affected Mr. Simmon.

28. The City initially agreed to fund Crisis Intervention Training, or CIT, in 2015.[2] However, the City stopped providing training in September of 2020 due to the pandemic. Id. As of November 2022, less than half of the uniformed officers have received CIT training. Id.

29. The situation has become so dire, that even officers have pushed back against the City and NYPD Officials concerning the lack of training. When Sergeant Hugh Barry shot an EDP in the Bronx, he argued during his administrative trial that " . . . the NYPD sends cops

---

[1] https://www.nytimes.com/2022/12/05/nyregion/mental-health-plan-nypd.html
[2] https://www.thecity.nyc/2022/12/12/23502195/what-happens-police-respond-mental-health-calls-edp

out with inadequate training and inadequate resources and then they act shocked when the inevitable happens."[3]

30. Here, when Mr. Simmon informed officers that he was feeling suicidal, proper protocol should have been applied including constant and consistent observation. Moreover, once Mr. Simmon started to attempt to commit suicide, the NYPD rush to use violence and escalate the situation resulted, *inter alia*, in Plaintiff's injuries.

31. Therefore, by the City failing to provide CIT to its officers, they showed a deliberate indifference to the type of violence and use of force suffered by Plaintiff.

### Claim II: Excessive Force Under U.S.C. § 1983
*Against Defendants John Does*

32. Plaintiff repeats and realleges each allegation contained in the preceding paragraphs as if fully set forth herein.

33. Defendant John Does, when rushing into Plaintiff's cell, used an unreasonable amount of force.

34. This use of force caused Plaintiff to suffer, *inter alia,* a broken wrist that required hospitalization and surgery.

35. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

---

[3] https://www.nydailynews.com/new-york/nyc-crime/ny-nypd-trial-deborah-danner-bronx-death-20220118-qf4admmk3fbm5ntacsxx24wdie-story.html

### Claim III: Failure To Intervene Under 42 U.S.C. § 1983
*Against Defendant John Does 1-3*

36. Plaintiff repeats and re-alleges each and every allegation as if fully set forth herein.

37. Those defendants that were present but did not actively participate in the aforementioned unlawful conduct, had a duty to intervene and prevent such conduct and failed to intervene.

38. Accordingly, the defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments.

39. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

[REMAINDER INTENTIONALLY LEFT BLANK]

**WHEREFORE**, Plaintiffs demand the following relief against Defendants:

a. Compensatory damages in an amount to be determined at trial;
b. Punitive Damages;
c. Reasonable costs and attorneys' fees under 42 U.S.C. § 1988;
d. Pre- and post-judgment interest to the fullest extent permitted by law; and
e. Any additional relief the Court deems just and proper.

DATED: this 22nd Day of February 2023                New York, New York

Yours, etc.

Lord Law Group PLLC

_____
Masai I. Lord, Esq.
14 Wall St., Ste 1603
New York, NY 10279
718-701-1002

*Counsel for Plaintiff Servisio Simmon*